## CASE NO. 22-4368

# IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

SYDNI FRAZIER,

*Defendant - Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## OPENING BRIEF OF APPELLANT

Christopher M. Davis
Mary E. Davis
DAVIS & DAVIS
1350 Connecticut Avenue, NW
Suite 202
Washington, DC 20036
202-234-7300
cmdavisdc@gmail.com
dcmedavis@gmail.com

*Counsel for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION........................................................... 1

STATEMENT OF THE ISSUES.................................................................. 2

STATEMENT OF THE CASE...................................................................... 2

STATEMENT OF FACTS .......................................................................... 4

SUMMARY OF THE ARGUMENT ........................................................ 6

ARGUMENT .............................................................................................. 7

I.      THE DISTRICT COURT ERRED WHEN IT DENIED
        APPELLANT'S MOTION TO SUPPRESS EVIDENCE
        RECOVERED AS A RESULT OF A WARRANTLESS
        SEARCH ........................................................................................ 7

        Standard of Review ...................................................................... 7

        A. Factual Background.................................................................. 8

        B. Appellant Had a Legitimate Expectation of Privacy in the
           Residence................................................................................ 10

           i.   Gray is Inapplicable Based on the Facts of this Case ................... 11

           ii.  Fact Appellant Was Incarcerated Matters Not............................... 13

II.     THE DISTRICT COURT ERRED WHEN IT FAILED TO
        PROVIDE A LEGALLY CORRECT ANSWER TO A NOTE
        FROM THE JURY ........................................................................ 15

        Standard of Review ...................................................................... 15

A. Factual Background..........................................................................15

B. The Re-Instruction to the Jury Was Erroneous ...................................18

III.   THE FAILURE TO REQUIRE UNANIMITY ON COUNT
       TWO REQUIRES THAT THE CONVICTION ON THAT
       COUNT BE VACATED ...........................................................21

       Standard of Review ...............................................................21

       A. Factual Background...........................................................21

       B. *Schad* is No Longer Good Law ...........................................22

IV.    THE COURT ERRED WHEN IT DENIED APPELLANT'S
       MOTION TO REOPEN SUPPRESSION HEARING AND
       MOTION FOR NEW TRIAL ....................................................23

       Standard of Review ...............................................................23

       A. Factual Background...........................................................24

       B. The District Court Erred When It Denied Appellant's Motion ..........25

            i.  Frazier Satisfied the Requirements Entitling Him to a
                *Franks* Hearing...........................................................25

            ii. Frazier Should Have Been Granted a New Trial ...........................30

CONCLUSION ...............................................................................33

REQUEST FOR ORAL ARGUMENT ................................................33

CERTIFICATE OF COMPLIANCE ...................................................35

CERTIFICATE OF SERVICE ..........................................................36

# TABLE OF AUTHORITIES

## Cases

*Brady v. Maryland*,
  373 U.S. 83 (1963)..................................................................31

*Edwards v. Vannoy*,
  141 S. Ct. 1547 (2021) ....................................................... 22

*Franks v. Delaware*,
  438 U.S. 154 (1978) ....................................................... 25, 26

*Hicks v. Scott*,
  958 F.3d 421 (6th Cir. 2020) ........................................... 12

*In re Irby*,
  858 F.3d 231 (4th Cir. 2017) ............................................19

*Kyles v. Whitley*,
  514 U.S. 419 (1995) ....................................................... 31, 32

*Miller v. Prince George's Co, MD,*
  475 F.3d 621, 628 (4th Cir. 2007) ...................................26

*Moore v. Illinois*,
  408 U.S. 786 (1972) ........................................................ 31

*Rakas v. Illinois*,
  439 U.S. 128 (1978) ........................................................ 10

*Ramos v. Louisiana*,
  140 S. Ct. 1390 (2020) ................................................... 22

*Rawlings v. Ky.*,
  448 U.S. 98 (1980) ......................................................... 10

*Schad v. Arizona*,
  501 U.S. 624 (1991) ................................................... 21, 22

*United States v. Agurs*,
  427 U.S. 97 (1976) ......................................................... 30

*United States v. Allen*,
  631 F.3d 164 (4th Cir. 2011) ........................................ 23

*United States v. Bagley*,
    473 U.S. 667 (1985) ........................................................................... 31

*United States v. Bartko*,
    728 F.3d 327 (4th Cir. 2013) ........................................................... 32

*United States v. Bran*,
    776 F.3d 276 (4th Cir. 2015) ...................................................... 17, 20

*United States v. Brooks*,
    966 F.2d 1500 (D.C. Cir. 1992) ....................................................... 32

*United States v. Colkley*,
    899 F.2d 297 (4th Cir. 1990) ...................................................... 26, 27

*United States v. Ferebee*,
    957 F.3d 406 (4th Cir. 2020) .............................................................11

*United States v. Foster*,
    507 F.3d 233 (4th Cir. 2007) ........................................................... 19

*United States v. Gray*,
    491 F.3d 138 (4th Cir. 2007) ........................................................ 9-10

*United States v. Higgins*,
    282 F.3d 1261 (10th Cir. 2002) ................................................... 12, 13

*United States v. Hill*,
    927 F.3d 188 (4th Cir. 2019) ........................................................... 21

*United States v. Horowitz*,
    806 F.2d 1222 (4th Cir. 1986) ................................................... 10-11

*United States v. Horton*,
    693 F.3d 463 (4th Cir. 2012) ........................................................... 31

*United States v. Horton*,
    921 F.2d 540 (4th Cir. 1990) ........................................................... 22

*United States v. Jefferson*,
    674 F.3d 332 (4th Cir. 2012) ........................................................... 21

*United States v. Jones*,
    942 F.3d 634 (4th Cir. 2019) ...................................................... 27, 28

*United States v. King*,
    628 F.3d 693 (4th Cir. 2011) ............................................................. 31

*United States v. Lull*,
    824 F.3d 109 (4th Cir. 2016) ....................................................... 27, 28

*United States v. Moody*,
    931 F.3d 366 (4th Cir. 2019) ...................................................... 23, 26

*United States v. Parker*,
    790 F.3d 550 (4th Cir. 2015) ............................................................. 32

*United States v. Pulley*,
    987 F.3d 370 (4th Cir. 2021) ............................................................. 26

*United States v. Reid*,
    523 F.3d 310 (4th Cir. 2008) ............................................................. 19

*United States v. Robinson*,
    430 F.2d 1141 (6th Cir. 1970) ...................................................... 13-14

*United States v. Robinson*,
    627 F.3d 941 (4th Cir. 2010) ............................................................. 32

*United States v. Rooks*,
    16 F. App'x 244 (4th Cir. 2001) ....................................................... 18

*United States v. Rose*,
    3 F.4th 722 (4th Cir. 2021) ............................................................... 12

*United States v. Rusher*,
    966 F.2d 868873 (4th Cir. 1992) ...................................................... 10

*United States v. Savoy*,
    889 F. Supp. 2d 78 (D.D.C. 2012) ................................................... 28

*United States v. Smith*,
    62 F.3d 641, 646 (4th Cir.1995) ...................................................... 15

*United States v. Stevenson*,
    396 F.3d 538 (4th Cir. 2005) ....................................................... 7, 13

*United States v. Tate*,
    524 F.3d 449 (4th Cir. 2008) ............................................................. 28

*United States v. United Med. & Surgical Supply Corp.,*
   989 F.2d 1390, 1406–07 (4th Cir.1993) ............................................ 15

*United States v. Wainwright,*
   480 F. App'x 238 (4th Cir. 2012) .................................................... 19

*United States v. Wharton,*
   840 F.3d 163 (4th Cir. 2016) .......................................................... 27

*United States v. Wolf,*
   860 F.3d 175 (4th Cir. 2017) .......................................................... 23

## Statutes

18 U.S.C. § 2 ....................................................................................... 3

18 U.S.C. § 922 ................................................................................... 3

18 U.S.C. § 924 ................................................................. 3, 6, 7, 18, 19

18 U.S.C. § 1111 ............................................................................ 3, 18

18 U.S.C. § 1112 ................................................................................ 18

18 U.S.C. § 3231 .................................................................................. 1

21 U.S.C. § 841 ................................................................................... 3

21 U.S.C. § 846 ................................................................................... 3

28 U.S.C. § 1291 .................................................................................. 1

## Rules

Fed. R. Crim. P. 12 ............................................................................ 23

## Constitutional

U.S. Const. amend. VI ........................................................................ 22

U.S. Const. amend. XIV ..................................................................... 22

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

### 22-4368
_____

### UNITED STATES OF AMERICA,

#### Appellee,

#### v.

### SYDNI FRAZIER,

#### Appellant.

_____

### OPENING BRIEF FOR THE APPELLANT
_____

### STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291.  Appellant was convicted on March 6, 2020, and sentenced on May 31, 2022. [JA32, JA37] [1] Judgment was filed on June 1, 2022. [JA727] The notice of appeal was timely filed on June 1, 2022. [JA733]

_____

[1] "JA" refers to the Joint Appendix filed in this case.

## STATEMENT OF THE ISSUES

I.    THE DISTRICT COURT ERRED WHEN IT DENIED
      APPELLANT'S MOTION TO SUPPRESS EVIDENCE
      RECOVERED AS A RESULT OF A WARRANTLESS
      SEARCH.

II.   THE DSITRICT COURT ERRED WHEN IT FAILED TO
      PROVIDE A LEGALLY CORRECT ANSWER TO A NOTE
      FROM THE  JURY.

III.  THE FAILURE TO REQUIRE UNANIMITY ON COUNT TWO
      REQUIRES THAT THE CONVICTION ON THAT COUNT BE
      VACATED.

IV.   THE COURT ERRED WHEN IT DENIED APPELLANT'S
      MOTION TO REOPEN SUPPRESSION HEARING AND
      MOTION FOR NEW TRIAL.

## STATEMENT OF THE CASE

Sydni Frazier was charged is a Second Superseding Indictment along with 13 co-defendants. He was charged in Count One Racketeering Conspiracy, Count Two Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, Count 22 Felon in Possession of Firearm and Ammunition, and Count 29 Possession with Intent to distribute Heroin and Fentanyl. [JA41-117]

Trial began on March 18, 2019. [JA23] On April 15, 2019, the district court entered an Order declaring a mistrial for manifest necessity as to Frazier, severing the charges against him, and scheduling a trial for a later date. [JA117]

On July 30, 2019, Frazier was charged in 4-count Third Superseding Indictment. Count One charged Conspiracy to Distribute Controlled Substances in

violation of 21 U.S.C. § 846; Count Two charged that Frazier Possessed,

Brandished, and Discharged a Firearm in Furtherance of a Drug Trafficking Crime

Resulting in Death in violation of 18 U.S.C. § 924(c), 18 U.S.C. § 924(j), 18

U.S.C. §1111, and 18 U.S.C. § 2; Count Three Charged Frazier with Felon in

Possession of Firearms in violation of 18 U.S.C § 922(g); Count Four charged

Possession with Intent to Distribute Heroin and Fentanyl in violation of 21 U.S.C.

§ 841. [JA119-123]

On August 14, 2019, Frazier filed a Motion to Suppress Tangible Evidence

recovered as a result of a warrantless entry and search of 961 Bennett Place,

Baltimore, Maryland. [JA126-136] A Response was filed on February 21, 2020

[JA243-264] and a Reply was filed on February 13, 2020 [JA137-148]. An

evidentiary hearing was held on February 18, 2020, and the motion was denied on

February 21, 2020. [JA265]

A jury trial commenced on February 24, 2020. On March 6, 2020, the jury

returned verdicts of guilty as to each count. [JA529-530]

On March 18, 2020, Frazier advised the district court through written

correspondence that counsel had learned through a Baltimore Sun news article that

Task Force Officer Ivo Louvado was criminally charged on March 12, 2020, as

part of a widespread investigation that began in 2018. The letter sought

information concerning Louvado's involvement in Frazier's investigation. [JA531-

556] The government filed a response on April 3, 2020. [JA557-559] The defense filed a second correspondence April 8, 2020. [JA560-561] A Motion to Reopen Suppression Hearing and Motion for New Trial was filed by Frazier on June 2, 2020. [JA572-579] The government filed a sealed response to the motion on September 14, 2020. A redacted Response was filed on November 30, 2020. [JA 687-664] A Reply to the Response was filed on January 24, 2021. [JA667-675] A Memorandum and Order denying the motion was filed on April 21, 2022. [JA676-700]

On June 1, 2022, Frazier was sentenced to 60 months on Counts One, Three, and Four, to run concurrent, and life as to Count Two, to run consecutive to Counts One, Three, and Four. [JA727-732] A Notice of Appeal was filed on June 1, 2022. [JA733] This appeal follows.

## STATEMENT OF FACTS

Homicide Detective Gary Niedermeier with the Baltimore City Police Department testified regarding the murder of Ricardo Johnson. At approximately 6:05 am on August 16, 2016, there was a call regarding a homicide. Niedermeier's office was called at approximately 6:25 am. The detective arrived at the 2200 block of Kloman Street approximately 30 minutes later. The victim was found inside a green Dodge van with multiple wounds. The victim's hands and feet were bound, and a blue bandana covered his face. No wallet, keys, cell phone, or

identification were recovered. The victim was later identified by his fingerprints. It was determined that the van was stolen. [JA267-277]

Law enforcement went to Johnson's residence and recovered four cellphones. On Johnson's Instagram were photos of Johnson wearing expensive clothing and jewelry, including a Rolex watch valued at approximately $30,000. It was determined that Johnson was unemployed. [JA296-297, JA299-302] Given that Johnson was 6 feet tall and weighed 190 pounds, Niedermeier believed 3 to 5 people were involved in the crime. [JA303]

Malcolm Lashley, aka "Spook", a seller of cocaine and heroin, testified for the government. Lashley has a 2018 conviction for racketeering and drug conspiracy. He entered a guilty plea and agreed to testify against Frazier. When sentenced, prior to his testimony against Frazier, Lashley was sentenced to time served, which was approximately just over two years. [JA320-323]

Lashley identified Frazier. Frazier told Lashley that he wanted to rob "Uncle Rick" who Lashley described as "flashy" and appeared to have a lot of money. [JA339, JA343] On the day of the homicide Frazier showed up on a dirt bike carrying a book bag. Lashley testified that Frazier showed him a gun. Frazier then rode off. Approximately 30 to 45 minutes later, Frazier ran back. He did not have the dirt bike or the book bag. Lashley alleged that Frazier told him that he was

chased by the police leading Frazier to throw the book bag and abandon the dirt

bike. Frazier thought the book bag was recovered by the police. [JA344-346]

Two days later, Frazier showed up with a large bag of drugs. Frazier told Lashley

that "he had got him," referring to Uncle Rick.[JA342-343]

## SUMMARY OF THE ARGUMENT

Frazier first argues that the district court erred when it denied his motion to

suppress items recovered from a house belonging to Frazier's mother and which

Frazier and others gutted and were repairing.  Police forcibly entered the house and

did not have a warrant. The court held Frazier lacked standing for two reasons.

First, the court determined that Frazier's presence while repairing the house was

commercial, rather than social. Second, the court held that since Frazier was

incarcerated, he no longer had a reasonable expectation of privacy.

Frazier next argues that the court failed to provide the jury with a legally

correct instruction in response to a note from the jury. In regard to an 18 U.S.C.

924(c) and (j) charge, the jury questioned whether it had to find that Frazier

possessed, brandished, and discharged a firearm or could it find just one. It was

Frazier's position that in order to convict of first degree premeditated murder, the

jury had to find all three. The court disagreed.

In the next issue, Frazier submits that since *Schad v. Arizona* was abrogated by *Ramos v. Arizona*, which was decided after Frazier's conviction, the failure to require unanimity on the 18 U.S.C. 924(c) and (j) count requires reversal.

Finally, Frazier argues that the district court erred in denying his motion to re-open the suppression hearing and to grant him a new trial. It was determined following conviction that an officer who was the affiant on three search warrants relevant to Frazier, was under criminal investigation and Frazier was not advised of this fact by the government.

## ARGUMENT

I.  **THE DISTRICT COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE RECOVERED AS A RESULT OF A WARRANTLESS SEARCH.**

**Standard of Review**

"In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law, and the standard for our review is well-established: We defer to the district court's factual findings and do not set them aside unless clearly erroneous; and we review legal conclusions *de novo.*" *United States v. Stevenson*, 396 F.3d 538, 541–42 (4th Cir. 2005) (internal citations omitted).

A.    **Factual Background**

Frazier filed a motion to suppress the evidence seized from the search of a residence located at 961 Bennett Place, Baltimore, Maryland that occurred on November 16, 2017. [JA126-136]

An evidentiary hearing was held on February 18, 2020. Lisa Bess, Frazier's mother, testified that she once lived at the Bennett Place residence with her 5 children, but was later evicted by Karim Faruq, the owner of the residence, due to "personal" issues. [JA152-153] In 2016 Karim gave her the house as a gift so she could renovate it and open it up as an assisted living facility. Frazier and a few friends helped with the "gutting" process and worked on renovating the house. [JA154]

The house had new windows which were covered (from the inside of the house) with plywood. One window had an ADT sticker attached. The front entrance had a modern door with two locks, including a deadbolt lock. The window to the right of the door had a "No Trespassing" sign in it. Clearly the intent of those in control of the house was to keep people from looking inside, as well as preventing them from entering. People had been hired to do the electrical work. Ms. Bess kept personal items in plastic bags in the residence, furniture and clothing were in the residence, and insulating materials were stacked up. [JA155-161, JA236-239, JAVOLIII  Ex 6-8]

Frazier was incarcerated in January 2017. [JA157] On November 15, 2017, Detective Sean Suiter died of a self-inflicted gunshot wound to his head. [JA126] The following day the Baltimore City Swat Team came on the scene and forcibly entered 961 Bennett Place. Following the illegal entry, the officers observed a Taurus box for a firearm, .25 caliber ammunition, .38 caliber ammunition, suspected CDS and paraphernalia, cell phones, a laptop, and a safe. Following the warrantless entry and subsequent illegal search, a search warrant was obtained. [JA132-136]

The affidavit in support of the request for a search warrant was vastly problematic. It states there was "evidence of suspected blood leading to this location …" There was no evidence to support this statement either through testimony or photographs. The affidavit then goes on to list all the items observed. The request for the search warrant was based solely on  the observation of the items following the illegal entry. [JA133] Clearly, there was nothing to support the forced entry of the dwelling a day after the shooting. Indeed, the affidavit lacked any independent information to justify the issuance of the search warrant.

The sale of the residence was finalized in December 2017, after the illegal search. [JA81]

The district court, referring to the search as a "warrantless arrest" of the house, denied the motion relying in large part on *United States v. Gray*, 491 F.3d

138 (4th Cir. 2007). [JA78-79] The court determined that "Gray [has] made significant distinction between people that are essentially present for a business transaction and those that are there as a social guest. And people present for a business transaction, generally speaking, don't have a legitimate expectation of privacy in the home or apartment of a third party." [JA79] The court further determined, "Even in addition to that, there are approximately ten months that pass after Mr. Frazier is arrested and before this search takes place. … [H]e would no longer reasonably or objectively expect to possess that ten months later. He was certainly not doing any renovation work while he was locked up. [JA82-83]

M. Frazier submits that the district court's decision was legally flawed.

## B.   Appellant Had a Legitimate Expectation of Privacy in the Residence

The district court held that Mr. Frazier did not have a legitimate expectation in the residence. Frazier respectfully disagrees.

The first issue a court must address in examining a Fourth Amendment claim is whether the defendant had a reasonable expectation of privacy. *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980); *Rakas v. Illinois*, 439 U.S. 128, 140, 150 (1978); *United States v. Rusher*, 966 F.2d 868873-74 (4th Cir. 1992). In determining standing, the relevant inquiry becomes 1) whether the defendant has a subjective expectation of privacy in the place to be searched; and 2) whether that expectation is objectively reasonable. *United States v. Horowitz*, 806 F.2d 1222,

1225 (4th Cir. 1986). "[T]he ultimate question of whether a given set of facts gives rise to a reasonable expectation of privacy is a legal question." *United States v. Ferebee,* 957 F.3d 406, 416 (4th Cir. 2020).

### i.    *Gray is Inapplicable Based on the Facts of this Case*

The district court relied on *Gray* holding that people that are present for a business transaction do not have a legitimate expectation of privacy in the home or apartment of a third party. But the facts in *Gray* distinguish it from this case.

In *Gray*, the Court noted that the Gray-Askew relationship was commercial, rather than social. Askew did not have a key to the apartment, he was there only a short amount of time, was one of several visitors, and was there solely for a business transaction. Frazier, on the other hand, was at the residence at the request of his mother. Furniture and clothing were in the residence, as well as Frazier's bank card. Frazier and his mother were the only two individuals with keys to the house. The residence was not accessible without a key as evidenced by the fact that law enforcement could enter only by breaking down the door. These facts readily distinguish it from *Gray*.

"In deciding whether a defendant has a reasonable expectation of privacy in property not in his possession at the time of the search, [courts] consider such factors as whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude

11

others from the property. In other words, to establish a reasonable expectation of privacy, a defendant must identify evidence objectively establishing his ownership, possession, or control of the property at issue." *United States v. Rose*, 3 F.4th 722, 727 (4th Cir. 2021) (internal citations and quotation marks omitted). See also *Hicks v. Scott*, 958 F.3d 421, 433 (6th Cir. 2020) ("It is only when a tenant should expect that members of the general public will pass through a common space—i.e., persons other than the landlord, co-tenants, and their invited guests—that she loses her reasonable expectation of privacy in that space.") Here, Frazier took a number of precautions to exclude others from the residence which satisfies the requirement that there be evidence establishing his control over the property.

This Court has not yet determined the precise issue in this case: Whether a family member working to rehab a residence and who takes precautions to exclude others from entering the residence has a reasonable expectation of privacy in the residence. A case out of the Tenth Circuit warrants discussion. In *United States v. Higgins*, 282 F.3d 1261 (10th Cir. 2002), the defendants had a verbal agreement with the owner to clean and fix up the house. The owner attempted to get a loan to do all the needed repairs, but the application was denied because of the condition of the house. The windows were broken and the doors knocked from their hinges. One defendant claimed there was an expectation of privacy because he had a key to a padlock on a fence. But the court dismissed that fact out of hand – "As to his

possession of the key to the padlock on the fence and his having brought personal property into the abandoned house, we conclude that these facts make no difference in these circumstances. Although having possession of a key may be relevant, here Mr. Higgins' evidence failed to establish that locking the exterior fence made these premises secure. To the contrary, with the windows smashed out and the doors off the hinges, as described in Mr. Higgins' own testimony on direct examination …, it seems likely that the padlock was ineffective and that anyone wishing to do so could have walked right in, past the doors which were swinging loose on their hinges or crawled in any broken window." *Id*. at 1271.

In this case, Frazier possessed one of two keys that kept the property secure, new windows were installed, all windows were boarded up, and a no trespassing sign was affixed to the premise. These facts establish his control over the property and, hence, standing to object to the illegal search and seizure.

### ii.    *Fact Appellant Was Incarcerated Matters Not*

The district court held that Frazier could no longer have a reasonable expectation of privacy because he was incarcerated 10 months before the search. But this determination is legally unsound. In *United States v. Stevenson*, 396 F.3d 538, 546 (4th Cir. 2005), the Court acknowledged, "After all, one can be in jail for a substantial amount of time, maintain an empty apartment on the outside, and intend to return to the apartment upon release." Likewise, in *United States v.*

*Robinson*, 430 F.2d 1141, 1143 (6th Cir. 1970) (internal citations and quotation marks omitted) the Court held, "Whether premises have been abandoned so as to sanction the warrantless search raises a significant issue of the intent of the occupier of the premises, since his mere absence from the premises without an intent to abandon could not legitimize such a search. While the intent of one in possession of property often cannot be directly shown but must be inferred from his actions, abandonment will not be presumed. It must be clearly shown by the party asserting it. Moreover, where, as here, the party's absence from the premises is involuntary because of his arrest and incarceration, the government should bear an especially heavy burden of showing that he intended to abandon them."

The law is clear in this Circuit as well as in others that arrest and incarceration do not indicate abandonment of the property. Based on the applicable law, the district court's decision was legally incorrect.

In all, Mr. Frazier established that his expectation of privacy was both subjectively and objectively sound. Therefore, all evidence seized from 961 Bennett Place should have been suppressed.[2]

---

[2] Because the district court ruled against Frazier on the standing issue, the court did not consider any other issues related to the search.

## II.    THE DISTRICT COURT ERRED WHEN IT FAILED TO PROVIDE A LEGALLY CORRECT ANSWER TO A NOTE FROM THE  JURY

### Standard of Review

"We review a district court's decision to respond to a jury's question, and the form of that response, for an abuse of discretion. *United States v. Smith,* 62 F.3d 641, 646 (4th Cir.1995). "[I]n responding to a jury's request for clarification on a charge, the district court's duty is simply to respond to the jury's apparent source of confusion fairly and accurately without creating prejudice." *Id.* An error requires reversal only if it is prejudicial in the context of the record as a whole. *United States v. United Med. & Surgical Supply Corp.,* 989 F.2d 1390, 1406–07 (4th Cir.1993).

### A.    Factual Background

Regarding Count Two of the Third Superseding Indictment, the Court instructed the jury as follows:

> Now, as to Count 2, the Government must prove each of the following elements beyond a reasonable doubt to meet its burden of proving the defendant guilty.
>
> First, that Mr. Frazier committed a drug-trafficking crime for which he might be prosecuted in a court of the United States; specifically that is the conspiracy to distribute and possess with intent to distribute controlled substances charged in Count 1.
>
> Second, they have to prove that on or about August 10th of 2016, he knowingly possessed, brandished, or discharged a firearm.

15

Third, that his possession, brandishing, or
discharging of the firearm was in furtherance of the
drug-trafficking crime.

Fourth, that *in the course of possessing, brandishing,
or discharging a firearm in furtherance of the drug-trafficking
crime, he caused the death of Ricardo Johnson and the killing
constituted murder in the first degree.*

[JA411-412] (emphasis added).

The court then went on to instruct the jury on felony murder and aiding and

abetting. The court did not advise the jury that in order to convict on Count Two,

the jury must be unanimous under what theory Frazier was guilty. [JA412-420]

Following the court's instructions to the jury, the government argued:

"Let me just say two things about Count 2. Remember that the
government can prove first degree murder in two ways. It can prove
it by showing premeditated murder, *which was the case here*, or it
can prove it under the felony murder rule, what the judge talked
about a moment ago.

If Sydni Frazier or his co-conspirators, in the course of
kidnapping and robbing Ricard Johnson, caused his death, he's just
as guilty of first-degree murder as if it was premeditated murder.

Count 2 also invokes the aiding and abetting statute. That
means that you don't have to find that Sydni Frazier physically
pulled the trigger on the morning of August 10th to find him guilty on
Count 2. If his one – if one of his co-conspirators did it and he took
some act or action to further that crime and he willfully became part
of that crime, he's just as guilty as the person who pulled that trigger.

[JA425] (emphasis added).

The government reiterated the same argument in rebuttal. [JA509-510]

16

During the course of deliberations, the jury sent out a note concerning Count Two. The jury noted that the instructions provide the language "did knowingly, intentionally, and unlawfully possess, brandish and discharge a firearm." But the next page of the instructions provides, "possession, brandishing or discharging." The jury then asked, "Is the charge that the defendant did all three or just one as part of Count 2?" [JA515]

It was the government's position that the answer was that they only need to find one of the three, relying on *United States v. Bran*, 776 F.3d 276 (4th Cir. 2015). While admitting that the facts are different, the government argued that under Bran, "the Fourth Circuit approves of a theory under which the defendant did not brandish or discharge a firearm. He provided a firearm to someone else who killed the victim. And the Fourth Circuit – clearly the jury did not need to find that the defendant brandished or discharged the firearm. [JA522-523] Notably, the government provided no argument as to the requirement for first degree murder.

The defense countered, "I think that in order to be held accountable under that unlawful killing of a (sic) malice aforethought, he's got to possess, brandish, and discharge. And then we should refer them to the two alternative theories and just tell them to review the instructions." [JA524]

Relying on *Bran*[3], the district court instructed the jury, in relevant part:

> The second question referred to a couple of parts of the jury
> instructions on Page 27 of the jury instructions, and that is quoting
> from the language of Count 1 of the third superseding indictment.
> There is a phrase, quote, did knowingly, intentionally, and
> unlawfully possess, brandish, and discharge a firearm.
>
> You've noted that on Page 28, in discussing the elements of the
> offense. The language is, quote, possession, brandishing or
> discharging a firearm.
>
> And the question is: Is the charge that the defendant did all three or
> just one as part of Count 2?
>
> The answer, briefly, is that it is one; it does not have to be all three.

[JA527-528]

## B.    The Re-Instruction to the Jury Was Erroneous

Title 18 U.S.C. § 924(j) provides in relevant part:

> **(j)** A person who, in the course of a violation of subsection (c),
> causes the death of a person through the use of a firearm, shall—
>
> **(1)** if the killing is a murder (as defined in section 1111), be punished
> by death or by imprisonment for any term of years or for life; and
>
> **(2)** if the killing is manslaughter (as defined in section 1112), be
> punished as provided in that section.

The defense argued that in order to convict of premeditated murder, the jury

should have been instructed it had to find that the defendant possessed, brandished,

---

[3] The district court also referenced *United States v. Rooks*, 16 Fed.Appx. 244 (4th
Cir. 2001). [JA515]. *Rooks* is also a case that dealt with an 924(j) conviction
premised solely on aiding and abetting.

and discharged the firearm because merely possessing or brandishing the firearm would not have caused the death of the victim. This theory is supported by Fourth Circuit caselaw. *See In re Irby*, 858 F.3d 231, 241 (4th Cir. 2017) (the jury was instructed that it could convict Irby if the Government proved that the defendant inflicted an injury or injuries upon [the victim] using a firearm from which [the victim] died.") (internal quotation marks omitted); *United States v. Wainwright*, 480 Fed.Appx. 238, 241 (4th Cir. 2012) ("[T]o support a conviction under 18 U.S.C. § 924(j), the government must show that the defendant, in the course of violating § 924(c) caused the death of a person through the use of a firearm. 18 U.S.C. 924(j).") ; *United States v. Reid*, 523 F.3d 310, 317-18 (4th Cir. 2008) ("In order to obtain a conviction on Count 4, the government was required to prove that (1) Reid was guilty of the drug conspiracy charged in Count 1; (2) during and in relation to that underlying conspiracy Reid used or carried a firearm, or in furtherance of that conspiracy, possessed a firearm; and (3) that Reid used the firearm to murder Hollis (or aided and abetted another in doing so)."); *United States v. Foster*, 507 F.3d 233, 245 (4th Cir. 2007) ("The § 924(j) count related to the McManus murder and charged that Taylor used a firearm in connection with the drug conspiracy count. Thus, with respect to this count, the government was required to prove three elements with regard to Taylor: (1) that Taylor committed the predicate drug conspiracy offense; (2) that Taylor used the firearm during and

in relation to the drug conspiracy offense; and (3) that, in the course of using that firearm, Taylor caused the murder of McManus."). Setting aside aiding and abetting for now, these cases firmly establish that to be found guilty of premeditated first degree murder the defendant must discharge the weapon and cause the death of the victim.

Relying on *Bran*, the government argued, and the court accepted, that this Circuit has held that the jury did not need to find that the defendant brandished or discharged the firearm. That is true – to an extent. What the government did not acknowledge, and the district court failed to address, is that the government's theory and the evidence presented was that Braun aided and abetted "the use, carriage, or discharge of a firearm and the firearm caused the death of the victim." *United States v. Bran*, 776 F.3d at 278.

That is not the case here. The government's argument was premised on the theory that Frazier could be guilty as a principal in premeditated murder, that Frazier aided and abetted premeditated murder, and that Frazier was guilty of felony murder. *Bran* only applies in the context of aiding and abetting – not if Frazier was the principal in the premeditated murder of the victim. Under the theory of premeditated first degree murder the jury had to find that Frazier possessed, brandished, and discharged the firearm causing the death of the victim.

20

A district court abuses its discretion by refusing to grant a requested instruction when the "instruction (1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired the defendant's ability to conduct his defense." *United States v. Hill*, 927 F.3d. 188, 209 (4th Cir. 2019). Mr. Frazier has satisfied each factor.

### III.    THE FAILURE TO REQUIRE UNANIMITY ON COUNT TWO REQUIRES THAT THE CONVICTION ON THAT COUNT BE VACATED

**Standard of Review**

This Circuit "review[s] de novo the claim that a jury instruction failed to correctly state the applicable law. *United States v. Jefferson*, 674 F.3d 332, 351 (4th Cir. 2012), *as amended* (Mar. 29, 2012). Frazier submits that de novo review should likewise apply when there has been a change in Supreme Court precedent following conviction.

### A.    Factual Background

A discussion regarding jury instructions was held in Chambers. Relying on *Schad v. Arizona*, 501 U.S. 624 (1991) the government submitted that the jury's decision whether to convict of premeditated murder versus felony murder need not be unanimous. The court agreed. [JA525-526] As a result, the jury was not instructed that the basis of the conviction on Count Two must be unanimous.

**B.    *Schad* is No Longer Good Law**

In *Schad* the Court considered "whether it was constitutionally acceptable to permit the jurors to reach one verdict based on any combination of the alternative findings. If it was, then the jury was unanimous in reaching the verdict, and petitioner's proposed unanimity rule would not help him. If it was not, and the jurors may not combine findings of premeditated and felony murder, then petitioner's conviction will fall even without his proposed rule, because the instructions allowed for the forbidden combination." *Schad v. Arizona*, 501 U.S at 630. The Court concluded the jury's options in this case did not fall beyond the constitutional bounds of fundamental fairness and rationality. *Id.* at 645.

But reversing courses, the Court in *Ramos v. Louisiana*[4], 140 S.Ct. 1390 (2020), determined that the Sixth Amendment right to a jury trial, as incorporated by the States by way of the Fourteenth Amendment, requires a unanimous verdict to convict a defendant of a serious offense. That *Ramos* abrogated *Schad* was recognized in *Edwards v. Vannoy*, 141 S. Ct. 1547, 1556 (2021).

Frazier submits that the ruling in *Ramos* calls into question this Circuit's decision in *United States v. Horton*, 921 F.2d 540 (1990). In that case, the Circuit held that the jury need not be unanimous on whether the defendant was guilty as a

---

[4] The jury in this case was instructed on March 2, 2020. *Ramos*  was decided on April 20, 2020.

principal of first degree premeditated murder or guilty on a theory of aiding or abetting. The Court reasoned that the instruction is proper when cases where the actual principal is not certain. But since *Ramos* now requires that a verdict be unanimous, the ruling in *Horton* carries no weight.

Because it is impossible to tell on which of three theories Frazier was convicted, the conviction on Count Two must be reversed.

## IV.    THE COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO REOPEN SUPPRESSION HEARING AND MOTION FOR NEW TRIAL

**Standard of Review**

This Court "assess[es] de novo the legal determinations underlying a district court's suppression rulings, including the denial of a *Franks* hearing, and review[s] the court's factual findings relating to such rulings for clear error." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).[5]

The Court reviews the district court's denial of a motion for a new trial under an abuse of discretion standard of review." *United States v. Wolf*, 860 F.3d 175, 189 (4th Cir. 2017).

---

[5] [T]he Federal Rules require certain motions, including a motion for a *Franks* hearing, to be made before trial if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(C)." *United States v. Moody*, 931 F.3d 366, 371 (4th Cir. 2019). Here, the basis for the motion occurred after the trial was complete.

23

A.    **Factual Background**

Frazier filed a Motion to Suppress Evidence Derived from Search of Cell Phones on August 24, 2017, as well as a Motion to Suppress Evidence Derived from Search of Social Media. The government filed its Opposition on May 15, 2018. There was no evidentiary hearing on the motions. The Court denied the motions on August 31, 2018. [JA7, JA13-14]

On March 18, 2020, Frazier advised the district court through a written correspondence that counsel had learned through a Baltimore Sun news article that Task Force Officer Ivo Louvado was criminally charged on March 12, 2020, as part of a widespread investigation that began in 2018. The letter sought information concerning Louvado's involvement in Frazier's investigation. [JA531-556] The government filed a response on April 3, 2020. [JA557-559] The government responded and stated, in relevant part, that Louvado was the affiant for the warrant for three cell phones seized at the time of Frazier's arrest on January 25, 2017, the warrant for Frazier's Instagram account, and the warrant for Shakeen Davis' cell phones seized at the time of Davis' arrest on February 24, 2017.[6]

---

[6] Louvado swore under oath, "The information contained in this Affidavit is based upon my personal participation in this investigation..." The government disputes this in its letter dated April 3, 2020: "With respect to each of these warrants, Louvado's affidavit merely relayed information reported by other investigators in the case. Louvado did not himself make any of the observations that served as the basis for probable cause." [JA557-558] In this instance, either the government was mistaken in its letter to defense counsel and Louvado was involved in the

Evidence obtained as a result of these three warrants was introduced at trial against Frazier.

A Motion to Reopen Suppression Hearing and Motion for New Trial was filed by Frazier on June 2, 2020. [JA572-579] The government filed a sealed response to the motion on September 14, 2020. A redacted Response was filed on November 30, 2020. [JA687-664] A Reply to the Response was filed on January 24, 2021. [JA667-675] The court denied Frazier's request to re-open the suppression hearing. [JA676-700]

**B.    The District Court Erred When It Denied Appellant's Motion**

*i. Frazier Satisfied the Requirements Entitling Him to a Franks Hearing*

To be entitled to a *Franks* hearing, the defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and the offending information must be essential to a probable cause determination. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In instances where there is a claim that the affiant omitted information, the defendant must show that the omission was designed to mislead or made in reckless disregard of whether it

---

investigation or, on the other hand, Louvado misrepresented his role in each of the affidavits.

would mislead, and that the omission was material, meaning inclusion in the affidavit would defeat probable cause. *United States v. Colkley,* 899 F.2d 297, 301 (4th Cir. 1990) "To establish a *Franks* violation, a defendant must prove that the affiant either intentionally or recklessly made a materially false statement or that the affiant intentionally or recklessly omitted material information from the warrant. *Franks* thus has two distinct prongs, requiring proof of both intentionality and materiality." *United States v. Pulley*, 987 F.3d 370 (4th Cir. 2021). *See also Miller v. Prince George's Co, MD,* 475 F.3d 621, 628 (4th Cir. 2007) ("Reckless disregard can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.") (internal citation and quotation marks omitted).

With respect to the second prong, "the defendant must show materiality—that is, that the false statements were 'necessary to the finding of probable cause.'" *United States v. Moody*, 931 F.3d 366, 371 (4th Cir. 2019), quoting *Franks*, 438 U.S. at 156) (other citations omitted). Courts will strip the allegedly false statements from an affidavit and determine whether the remaining portion of an application would still support a finding of probable cause. *Id.*

When facts have been recklessly or intentionally omitted the Court, in assessing materiality, should "insert the facts recklessly [or intentionally] omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause. If the corrected warrant affidavit establishes probable cause, there is no *Franks* violation." *United States v. Wharton*, 840 F.3d 163, 169 (4th Cir. 2016) (internal quotation marks omitted).

The Fourth Circuit first applied *Franks* to intentional, material omissions in *United States v. Colkley, supra.* When considering omissions in an affidavit, to obtain a *Franks* hearing, the defendant must show that the omissions were "*designed to mislead,* or ... made in *reckless disregard of whether they would mislead* " and that the omissions were material, meaning that their "inclusion in the affidavit would defeat probable cause." *Id.* at 301 (emphasis added). *See also United States v. Lull*, 824 F.3d 109, 155-20 (4th Cir. 2016) (omission of fact that confidential informant attempted to steal money from officers after his controlled buy of drugs, for which how was indicted and terminated as a cooperating informant, was at least reckless and was material to probable cause, reversing conviction). Evidence is deemed material if it defeats probable cause. *United States v. Jones*, 942 F.3d 634 (4th Cir. 2019). "We assess materiality using a simple test. We insert the omitted facts into the warrant affidavit and, examining the information contained within the 'revised' affidavit, evaluate whether there

nevertheless would have been probable cause to issue the warrant. If the revised affidavit still establishes probable cause, the defendant is not entitled to a *Franks* hearing." *Id.* at 640. The omitted facts are not material "if the issuing judge would have granted the search warrant even if the affidavit included the allegedly omitted information..." *United States v. Tate*, 524 F.3d 449, 457 (4th Cir. 2008). The characteristics of the affiant of the affidavit are not mere window dressing. *See United States v. Savoy*, 889 F. Supp. 2d 78, 87 (D.D.C. 2012) ("In examining whether probable cause existed to grant a search warrant, reviewing courts look at the 'totality of the circumstances' rather than considering facts in isolation. This Court must consider, therefore, whether the issuing judges would have issued the search warrants if Louvado included in the "Affiant Background" that he was involved in and was being investigated for egregious corrupt conduct. His failure to so advise can easily be viewed as a fraud upon the court. Finally, "In evaluating whether probable cause would have existed if the omitted statements had been included, we only consider the information actually presented to the magistrate during the warrant application process." *United States v. Lull*, *supra* at 119 n. 3 (internal quotation mark and citation omitted). As such, the Court cannot look to any other evidence and must restrict this review to the four corners of the warrant; the Court cannot consider the trial testimony offered by other government witnesses. Therefore, to show the omission was material, Frazier must show (1)

that the omission is the product of a deliberate falsehood or reckless disregard for the truth and (2) inclusion of the omitted information in the affidavit would defeat probable cause.

Officer Louvado's criminal conduct occurred in February 2009 and the FBI interviewed him in May 2018, which was prior to the motions hearing and trial. During that interview Louvado provided false information in an effort to conceal his criminal involvement. His conduct led to him being criminally charged. Yet, Louvado portrayed himself as a law-abiding detective having extensive training and experience. He further swore that information in the affidavit was based, in part, on his personal investigation. He also swore that he has "not, however, excluded any information known to me that would defeat a determination of probable cause." Clearly, his criminal background would have defeated a determination of probable cause. Frazier submits Louvado's omission of these facts was meant to mislead the issuing judges.

Further, Frazier argues that those omissions were material. Surely, had these omissions been included in Louvado's affidavit, the warrants would not have been approved. In fact, if this information were included, it is unlikely the affidavit would have even been presented to the court. Had Frazier been advised by the government of Louvado's criminal lawlessness, he would have been allowed to present this information in a *Franks* hearing. But because this information was

intentionally withheld from Frazier, it was proper for the district court to reopen the suppression hearing, which it failed to do.

In denying the motion for a *Franks* hearing, the court stated, "Excluding any declarations from Louvado as to his personal honesty or including the omitted information about the 2009 theft still leaves sufficient confidential informant and other information to justify probable cause for the wiretaps and searches." [JA717-718] Frazier submits that he should have been given the opportunity to thoroughly question Louvado because the stakes in his case were so high. As the government conceded, "The evidence introduced at trial that flowed from the warrants related almost exclusively to Frazier's involvement in heroin trafficking conspiracy not to the murder of Ricardo Johnson charged in Count Three (sic)"[7] [JA557, JA662] But what both the government and the district court ignored was that if Frazier was found not guilty on Count One, he could not have been found guilty on Count Two.

ii.    *Frazier Should Have Been Granted a New Trial*

The Due Process Clause requires a prosecutor to disclose to criminal defendants favorable evidence in the government's possession that is material either to guilt or punishment irrespective of the good or bad faith of the prosecutor. *United States v. Agurs*, 427 U.S. 97, 109 (1976). Suppression of exculpatory

---

[7] The murder allegation was charged in Count Two.

evidence by the Government that is material to the outcome of a trial violates due process, irrespective of the motivation of the prosecutor. *Brady v. Maryland*, *supra*. Evidence is material when "its suppression undermines confidence in the outcome of the trial" -that is when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 678, 682 (1985), *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995).

To prove a *Brady* violation, a defendant must show that the undisclosed evidence was (1) favorable to the defendant; (2) material; (3) that the prosecution had the materials and failed to disclose them. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972), accord, *United States v. Horton*, 693 F.3d 463, 470 (4th Cir. 2012); *United States v. King*, 628 F.3d 693, 701-02 (4th Cir. 2011).

For all the reasons set forth previously, the concealed evidence was favorable to Frazier. The facts set forth in the Louvado Information clearly demonstrate that Louvado misled the issuing judges into thinking he was a trustworthy, experienced narcotics investigator when in fact he was a rogue, corrupt agent whom the government entrusted with upholding the law but instead, took advantage of his position and participated in egregious criminal behavior.

And the information about Louvado was material. As such, there is a "reasonable possibility that its disclosure would have produced a different result."

*United States v. Bartko,* 728 F.3d 327, 338 (4th Cir. 2013). "This standard does not require a showing that a jury more likely than not would have returned a different verdict." *United States v. Parker,* 790 F.3d 550, 550 (4th Cir. 2015). Had the information been disclosed prior to trial, Frazier could have argued to reopen the motion to suppress because the withheld evidence entitled him to a *Franks* hearing. The result, as addressed in Issue I, above, would have led to the suppression of all evidence seized as a result of two of the three warrants. This would have dramatically altered the government's case and the evidence it could have introduced at trial.

It is not in dispute that this material was **never** disclosed to Frazier; counsel became aware of it by way of the *Baltimore Sun* six days after the guilty verdict was rendered. Indeed, the government gives no justification for it not being provided. It is no defense to non-disclosure that the evidence was in the hands of investigators and its existence was personally unknown to the prosecutors. The knowledge of investigators is imputed to the prosecutors regardless of actual awareness. *United States v. Robinson*, 627 F.3d at 951-52 (4th Cir. 2010), accord, *Kyles v. Whitley*, 514 U.S. at 437 (1995). See also *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) ( "[g]iven the close working relationship between the Washington metropolitan police and the U.S. Attorney for the District of Columbia (who prosecutes both federal and

District crimes, in both the federal and Superior courts), a relationship obviously at work in this prosecution, the duty must reach the police department's homicide and Internal Affairs Division files."). Even if the prosecutors in this case were somehow kept in the dark regarding the investigation into Louvado, their superiors certainly were not. As such, this information was known by the government before the motion hearing and the trial, yet it chose not to disclose it as required.

For these reasons, Frazier was entitled to a new trial.

## CONCLUSION

For the foregoing reasons, Mr. Frazier submits that his conviction must be reversed.

## REQUEST FOR ORAL ARGUMENT

Mr. Frazier requests that he be granted oral argument.

Respectfully submitted,


/s/ Christopher M. Davis
Christopher M. Davis


/s/ Mary E. Davis
Mary E. Davis

Davis & Davis
1350 Connecticut Avenue, NW
Washington, DC 20036
(202) 234-7300

*Counsel for Sydni Frazier*

# CERTIFICATE OF COMPLIANCE

1. The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2. Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains 7,552 words.

3. I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief with the word or line printout.

/s/ Christopher M. Davis
Christopher M. Davis

## CERTIFICATE OF SERVICE

I certify that, on May 11, 2023, I electronically filed the foregoing Opening Brief of Appellant with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

I further certify, that on May 11, 2023, I served Joint Appendix Volume III - Digital Media, via electronic transmission, on counsel listed below:

Christina A. Hoffman
Brandon K. Moore
OFFICE OF THE UNITED
STATES ATTORNEY
36 South Charles Street
4th Floor
Baltimore, MD 21201

christina.hoffman@usdoj.gov
brandon.moore@usdoj.gov

/s/ Christopher M. Davis
Christopher M. Davis